UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GRACIE MARTINEZ,

        Plaintiff,                        Case No.
                                                Hon.
vs.                                             Mag. Judge

ADRIAN COLLEGE, a Michigan
non-profit corporation,

        Defendant.
_____/

James C. Baker (P62668)
Attorney for Plaintiff
STERLING ATTORNEYS AT LAW, P.C.
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com
_____/

**COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff GRACIE MARTINEZ, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., and for her Complaint and Jury Demand against Defendant, ADRIAN COLLEGE, submits the following:

1. This is an action for employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq*, and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.*, arising out of Plaintiff's employment relationship with Defendant.

## JURISDICTIONAL ALLEGATIONS

2. Plaintiff Gracie Martinez ("Plaintiff," "Coach Martinez," "Gracie") is an individual residing in Atlanta, Georgia.

3. Adrian College ("Defendant," "Adrian") is a Michigan non-profit corporation with its campus and principal location in Adrian, Michigan.

4. Plaintiff is a former employee of Defendant at its Adrian, Michigan location.

5. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq*.

6. The events giving rise to this case occurred in Adrian, Michigan which is within this Court's District and Division.

7. This Court has subject matter jurisdiction of Plaintiff's claims pursuant to 28 USC 1331 (federal question), 28 USC 1343 (civil rights), and 28 USC 1367 (supplemental jurisdiction).

8. Plaintiff timely filed charges with Equal Employment Opportunity Commission, and on January 29, 2026 the EEOC issued a closure notice and 90-day "Right to Sue."

9. This Complaint is timely filed.

## GENERAL ALLEGATIONS

10. Gracie Martinez is a woman.

11. Coach Martinez was recruited to join Adrian College and gave up opportunities in the Atlanta Georgia area to move to Adrian Michigan to accept the position as Women's Rugby Coach starting September 9, 2024.

12. She was living in Atlanta Georgia at the time, working as a contractor for the federal government, was a rugby head coach, and had a burgeoning public speaking career.

13. Plaintiff was fired on May 12, 2025.

14. Adrian told Coach Martinez her firing was for not meeting recruiting metrics.

15. However, the school never informed her that her performance would be measured by recruiting metrics.

16. Had the college provided her with metrics, those metrics would have likely taken into account the unique challenges facing the team – such as transitioning from D3 to D1 in a matter of months, not offering athletic scholarships compared to the 29 NCAA women's programs that do offer them, the school's status as a private institution with tuition costs ranging from $40-60k per year, and the institution's retention rate of only 60%.

17. Had the college informed her that her performance would be evaluated by metrics expectations, Plaintiff would have been suitably positioned to meet those expectations.

18. Instead, Coach Martinez was provided with no recruiting metrics she was expected to meet.

19. Further, Adrian never expressed there was any problem with how Plaintiff was performing her job; never was she told her job was in jeopardy.

20. As part of the decision to terminate her, Adrian also said Coach Martinez didn't attend meetings.

21. Adrian College was aware Plaintiff had a full-time job as a federal contractor and public speaker.

22. She was open with the school about this when she was recruited for the coaching position.

23. Even so, before every meeting she let the Athletic Director and the Men's Head Coach know she would not be attending.

24. She received emails in response from the Assistant Athletic Director acknowledging her absence.

25. Through this process, Plaintiff was kept abreast of the information shared in the meetings and was able to provide her input as needed.

26. Never did Adrian College say, or even suggest, that her missing a meeting was an issue for the school and/or was putting her continued employment in jeopardy.

27. As with recruiting, Adrian College never told Coach Martinez that attendance at meetings was mandatory or a condition of her employment.

28. What Coach Martinez was told were reasons for her termination were pretext for discrimination and retaliation.

29. Proof the recruiting metrics claim was pretext for discrimination includes that the Men's Head Rugby Coach didn't recruit at all.

30. Adrian's Men's Rugby team dropped from 35 players to 8 under the Men's Head Rugby Coach

31. The Men's Rugby Coach and/or his lack of leadership caused Adrian College to incur a $15,000 fine for not finishing the season.

32. Parents called for the Men's Rugby Coach to be fired.

33. Under this Coach, there were media reports of police involvement with his drunk student athletes.

34. The Men's Rugby Coach was retained and Plaintiff was fired.

35. Still other evidence of disparate treatment based on sex included the Men's Rugby Coach made $12,000 more per year than Coach Martinez.

36. Plaintiff was as qualified, if not more.

37. She performed the duties of Head Coach for the Women's Team, which did not see the same level of attrition as the Men's Team, and worked just as hard as the Assistant Coach for the Men's Rugby Team.

38. Plaintiff was forced to split her coaching attention between being the Head Coach of the Women's Rugby Team and stepping in to help address and resolve the issues with the Men's team its Head Coach was not addressing.

5

39. Adrian said Plaintiff didn't attend meetings, yet she had many meetings with members of the Men's team and their parents.

40. Adrian College knew members of the Men's team were quitting the team because of the Men's Head Coach and his demeanor.

41. It didn't fire him despite many requests to do so.

42. Coach Martinez worked diligently and devoted considerable time to the Men's team at no additional expense to the school.

43. She tried to salvage the Men's program despite its Head Coach.

44. Adrian's leadership undermined her and would not even acknowledge her coaching role with the Men's team.

45. The motivation to deny her that recognition was because Plaintiff is a woman.

46. Under Coach Martinez's leadership, the Women's Rugby Team at Adrian College demonstrated significant progress, particularly given the challenges of transitioning from a Division III to a Division I program.

47. Despite no athletic scholarships and limited recruiting resources, Coach Martinez successfully fostered a culture of discipline, accountability, and growth.

48. The team's improvement was reflected in a 50.82% increase in win percentage from 2023 to 2024.

49. In less than six months, under her guidance, the players' fitness and skills saw remarkable improvement, with beep test scores improving by 91%, and Bronco test scores improving by 12% from the fall.

50. Coach Martinez also ensured her team maintained a strong academic standing, with a team GPA of 3.22, demonstrating her commitment to developing well-rounded student-athletes.

51. Under Plaintiff's leadership, the Women's Rugby Team was thriving, becoming stronger both physically and academically.

52. Coach Martinez's track record underscored her capability and dedication as a coach.

53. From the start of her time with Adrian College, Gracie Martinez fought for her student athletes.

54. Rugby is a tough sport, and she didn't want her athletes getting hurt unnecessarily.

55. The College ignored concussion protocols.

56. Plaintiff brought her concerns to the Athletic Trainer's attention, and she was called into a meeting with the Men's Head Coach, the Athletic Director, the Assistant AD, head of recruiting, and the trainer, only to be reprimanded for advocating for the student athletes' safety.

57. The Men's Head Coach was never reprimanded for advocating for his male players' safety.

58. Coach Martinez was a known advocate for women's sports and her female student athletes.

59. Plaintiff was retaliated against for her advocacy.

60. Adrian College replaced her with a male head coach.

61. Because Plaintiff was discriminated and retaliated against, she lost her coaching opportunity; Plaintiff was forced to uproot herself again, and moved back to Atlanta.

62. Coach Martinez saw herself continuing a successful coaching career with Adrian College.

63. The College destroyed those dreams, and in the meantime directly threatened Plaintiff's future in coaching.

64. Worse still were the emotional effects of learning, after-the-fact, that Adrian College manufactured "cause" for the termination just to avoid an unemployment claim.

65. With the loss of her career at Adrian College, Plaintiff suffered her lost base salary, her benefits package, the intangible benefits of a career now blemished with a wrongful firing, and she suffers the "garden variety" emotional distress associated with being fired because she is a woman.

## COUNT I
## DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

66. Plaintiff incorporates the preceding paragraphs by reference.

8

67. Plaintiff was qualified for her position.

68. Plaintiff's termination was an adverse employment action.

69. Defendant's leadership and fellow Coach of the Men's Rugby Team, and others discriminated against Plaintiff with respect to employment terms, conditions, and privileges due to Plaintiff's sex.

70. Defendant's leadership and fellow Coach of the Men's Rugby Team, and others engaged in a pattern and practice of workplace behaviors motivated by sex.

71. Defendant treated Plaintiff differently than a man in a same or similar role.

72. Plaintiff's sex was a motivating factor in Defendant's decision to fire her.

73. Defendant's treatment and termination of Plaintiff, as described above, was based, at least in part, on unlawful consideration of her sex.

74. Defendant, by its agents, was predisposed to discriminate on the basis of sex, and acted consistent with that predisposition.

75. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

76. Defendant's alleged reason for terminating Plaintiff was a pretext for sex discrimination.

77. Defendant's discrimination denied Plaintiff the opportunity for continued employment and adversely affected her compensation, terms, conditions, and privileges of employment in violation of Title VII of the Civil Rights Act of 1964, 41 USC 2000e *et seq*.

78. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered injuries and is entitled to compensation for any lost wages, her lost tangible and intangible benefits of employment, her "garden variety" emotional distress from losing the job and opportunities associated therewith, and other incidental, consequential, and punitive damages, including attorney fees and interest as an element of damages, statutory attorney fees, and costs.

## COUNT II
## RETALIATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

79. Plaintiff incorporates the preceding paragraphs by reference.

80. Title VII of the Civil Rights Act of 1964 prohibits retaliation against a person because that person opposes a violation of the Act.

81. Plaintiff opposed sex discrimination practices within Defendant's facility and by men who were in her chain of command and her colleague, the Coach of the Men's Rugby Team.

82. Plaintiff's opposition culminated in her involuntary discharge from employment.

83. Defendant acknowledged Plaintiff's opposition without remedy.

84. Defendant's conduct toward Plaintiff revealed an intent to retaliate against her because she is a woman and because she complained how women rugby players were treated compared to male players at Adrian College.

85. Defendant illegally retaliated against Plaintiff because she opposed discrimination based on sex, by bringing her valid, factual, and evidentiary concerns to Adrian's attention.

86. Defendant continued to retaliate after Plaintiff was terminated.

87. The actions of Defendant by its agents were deliberate and intentional, and engaged in with malice, or with reckless indifference to the rights and sensibilities of Plaintiff.

88. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered injuries and is entitled to compensation for any lost wages, her lost tangible and intangible benefits of employment, her "garden variety" emotional distress from losing the job and opportunities associated therewith, and other incidental, consequential, and punitive damages, including attorney fees and interest as an element of damages, statutory attorney fees, and costs.

## COUNT III
## SEX DISCRIMINATION AND RETALIATION
## IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

89. Plaintiff incorporates the preceding paragraphs by reference.

90. At relevant times, Plaintiff was an employee and Defendant was her employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2101, *et seq*.

91. Michigan's Elliott-Larsen Civil Rights Act prohibits discrimination and retaliation because of sex.

92. Defendant, by its agents, engaged in sex-based behaviors, including Defendant being motivated by sex in its conduct and actions toward Plaintiff.

93. Defendant's conduct and actions toward Plaintiff were made based on pretext and impermissible considerations of Plaintiff's sex.

94. Defendant, by its agents, was predisposed to discriminate because of sex and acted in accordance with that predisposition.

95. Defendant's actions were intentional and engaged in with reckless disregard for Plaintiff's rights.

96. Plaintiff opposed Defendant's conduct and actions that were impermissibly based on sex, made her opposition known, Defendant knew Plaintiff opposed sex-based conduct and actions, and Defendant was motivated to retaliate against Plaintiff because of her opposition.

97. Defendant retaliated against Plaintiff because of her opposition to Defendant's sex-based conduct.

98. As a direct and proximate result of Defendant's discrimination and retaliation, Plaintiff has suffered injuries and is entitled to compensation for any

lost wages, her lost tangible and intangible benefits of employment, her "garden variety" emotional distress from losing the job and opportunities associated therewith, and other incidental, consequential, and punitive damages, including interest as an element of damages, statutory attorney fees, and costs.

WHEREFORE, Plaintiff Gracie Martinez, by and through her attorney James C. Baker of Sterling Attorneys at Law, P.C., respectfully requests that this Honorable Court enter a Judgment against Defendant, for compensation of her lost wages and fringe benefits, compensation for front pay where applicable, "garden-variety" emotional distress damages; other non-economic damages as available, consequential, compensatory, and other available damages, and statutory attorney fees and costs.

## JURY DEMAND

Plaintiff Gracie Martinez, by her attorney James C. Baker of Sterling Attorneys at Law, P.C., demands a trial by jury.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/James C. Baker
James C. Baker (P62668)
Attorney for Plaintiff
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500
jbaker@sterlingattorneys.com

Dated: February 13, 2026